# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Samuel Lee Berrelle Rakestraw, III - 004<br>Michael Anthony Williams - 005,<br><br>Defendants. | No. CR-18-01695-004-TUC-JAS (EJM)<br><br>**ORDER** |

Before the Court is a Report and Recommendation (R&R) by Magistrate Judge Markovich (Doc. 2325). Judge Markovich recommends this Court grant Defendants' Motion to Preclude Expert Testimony (Doc. 1610). The Court has reviewed the underlying Motion, the government's Response (Doc. 1680) and Defendants' Reply (Doc. 1712). The Court has also reviewed Judge Markovich's R&R, the government's Objection (Doc. 2365) and Defendants' Response (Doc. 2431). Finally, the Court has reviewed the transcripts from the *Daubert* hearings on Defendants' Motion (Docs. 2207 and 2257). The Court has also reviewed all other parts of the record pertinent to Defendant's Motion.  For the reasons set forth below, the Court responds to Part A of the Discussion in Judge Markovich's R&R, where he made no recommendation and left the issue for this Court to decide. The Court adopts Part B and rejects Part C.

**I.**

Agent Sonnendecker intends to deliver testimony interpreting cell phone records he obtained from various cell service providers. The records include which phone numbers

1  connected with other numbers and at which time (cellular events) and which antennas a
2  cellphone was connected to during a cellular event. Doc. 2325 at 3. Records also include
3  the precise locations of each of the cell antennas for which Agent Sonnendecker obtained
4  information. Doc. 1680-1. Records from some but not all providers include sector
5  information, which allows one to infer a cellphone's direction with respect to an antenna.
6  *Id.* at 5. Agent Sonnendecker also intends to testify to the typical coverage range of
7  antennas, accounting for factors such as topography and population density. *See id.* at 7-8,
8  10-11. In areas pertinent to this case, Agent Sonnendecker testified that ranges may be
9  around one to one-and-a-half miles or as little as several hundred feet. *Id.* at 11.

10  Putting all this information together, Agent Sonnendecker means to locate
11  cellphones belonging to Defendants within a "coverage area." When combined with the
12  locations of crimes Defendants are accused of perpetrating, this testimony will be used to
13  attempt to place Defendants within an area of a few square miles encompassing those crime
14  scenes, which would imply Defendants' presence at the crime scenes themselves.

15  Defendants objected to Agent Sonnendecker's qualifications, the reliability of his
16  methodology, and the adequacy of the government's disclosures. Judge Markovich found
17  Agent Sonnendecker was qualified as an expert based on his experience. *Id.* at 51. Despite
18  this, Judge Markovich found Agent Sonnendecker's expert testimony lacked foundation
19  and was therefore not reliable enough nor based on sufficient facts or data to be admitted
20  under Rule 702. *Id.* at 40. Judge Markovich was also concerned that presenting Agent
21  Sonnendecker's testimony risked misleading the jury to an extent prohibited under Rule
22  403. *See id.* at 50-51. Lastly, Judge Markovich made no recommendation on the adequacy
23  of the government's disclosures, leaving that issue for this Court. *Id.* at 37-38.

24  The Government objected to the R&R and argued that Agent Sonnendecker's
25  testimony was helpful, reliable, and based on sufficient facts and data. Doc. 2365 at 10-16.
26  According to the government, Judge Markovich held Agent Sonnendecker's testimony to
27  an excessively-high standard and consequently encroached upon the jury's role as
28  factfinder. *Id.*

**II.**

This Court reviews a magistrate judge's recommendation to exclude evidence de novo. Fed. R. Crim. P. 59(b)(1), (b)(3); 28 U.S.C. §636(b)(1)(C). This Court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). This Court "does not defer" to the magistrate's "ruling but freely considers the matter anew, as if no decision had been rendered below." *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009).

**III.**

A. Non-Expert Fact Testimony

The Court agrees with and adopts Part B of the Discussion in Judge Markovich's Report and Recommendation. Doc. 2325 at 38-40. There, Judge Markovich found that testimony regarding which phone numbers connected to other phone numbers and at which times (collectively, cellular events) is admissible as fact, rather than expert testimony.

B. Foundation of Expert Testimony

Agent Sonnendecker obtained cell-site information from multiple cell-service providers. That information included which antenna a cellphone connected to, the precise location of that antenna, and for some providers, the specific sector a cellphone connected to along with that sector's coverage angle (or azimuth). Doc. 1680 at 8. The typical sector has a coverage angle of 120 degrees, or one third of a circle. Doc. 2325 at 5. So, upon learning that a cellphone connected to a specific sector of an antenna the location of which is known, one can infer that the cellphone was within a wedge-shaped region extending from the antenna, the sides of the wedge being 120 degrees apart.

Judge Markovich argues that this information alone is not probative because the position of the arc at the end of a wedge is unknown. *See id.* at 40. Thus, one cannot know the coverage *area* of a sector. *Id.* Judge Markovich found, and this Court agrees, that Agent Sonnendecker did not adequately account for many features which could affect the range of an antenna's signal. *Id.* at 42-44 (finding that Agent Sonnendecker did not account for topographic features, buildings, population density, and the engineering of specific antennas). Without a detailed accounting of factors affecting range, the Court cannot permit

Agent Sonnendecker testify that an antenna has a particular range. Without a range, the 120-degree wedge describes an undefined area, theoretically extending to infinity. The question is whether this undefined coverage area, a mere coverage angle, is limited enough that a cellphone's presence within it is probative. Judge Markovich found it was not, but this Court disagrees.

In *U.S. v. Jones*, a district court faced a similar question on the reliability and probative value of coverage angle data without a definite range. 918 F.Supp.2d 1 (D.D.C. 2013). The court rejected the defendant's argument that an expert's testimony on coverage angles was unreliable and not probative. *Id.* Challenges to reliability really went to the weight of the evidence, the court reasoned. *Id.* at 5. The evidence was probative because, although it could not pinpoint a cellphone user's location, it could narrow it down. *Id.* at 6.

The Court agrees with the reasoning in *Jones*. This Court's duty on a reliability screening is not to ensure the absolute veracity of an expert's claims, nor is it to require the strictest analytical methodology. *See Daubert v. Merrell Dow Pharms., Inc.*, (*Daubert II*), 43 F.3d 1311, 1318 (9th Cir. 1995) ("[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology."); *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."); *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1048 (9th Cir. 2014) ("[A] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method does not remder expert testimony inadmissible.") (internal quotation omitted). Simply put, imperfect methodology does not necessarily mean inadmissible testimony.

Agent Sonnendecker will be subject to cross examination, giving Defendants ample opportunity to identify any weaknesses or oversights in his methodology. Defendants may also bring their own expert to counter any of Agent Sonnendecker's claims and to question his methods. The Court is satisfied that this will be enough for jury to properly evaluate the strengths and weaknesses of Agent Sonnendecker's testimony.

   The Court also finds the probative value of Agent Sonendecker's testimony is not substantially outweighed by the risk of unfair prejudice, misleading the jury, confusion, etc. *See* Fed. R. Evid. 403. The probative value of the testimony is clear: upon learning that a cellphone user was within a 120-degree angle of an antenna with a known location, one can conclude that the user was not in the remaining 240 degrees. If an event took place at a location within that 120-degree angle, and cell site information shows that a cellphone user was within that 120-degree angle, one can more easily conclude that the user was at the location in question. Of course, a 120-degree angle in a dense urban environment can cover a great many locations, so the evidence is far from conclusive. The probative value of such evidence is bolstered if there are other indicia of a person's presence at the location in question. Together with forensic evidence, eyewitness testimony, coconspirator statements, and so on, evidence showing that someone was in a specific part of a city, even a large swathe, can help place a person at a specific location at a specific time.

   Agent Sonnendecker's testimony may be probative, but the Court must still weigh it against the cautionary factors raised in Rule 403. The Court is especially concerned with the possibility that Agent Sonnendecker's testimony might mislead the jury. As such, it is imperative that any testimony does not create the impression that the cell-site information can identify an *area* instead of an *angle*. Using the term "coverage area" might mislead the jury into believing that the cell-site information is more precise than it actually is. Still, Agent Sonnendecker may testify in the form of expert opinion as to the ranges of cell antenna connections *generally*, accounting for topographic features, population density, and other factors mentioned in the *Daubert* hearings. But he must be clear that he did not measure the range of any individual antennas in this case, nor may he purport to know the range of any individual antennas. The jury may draw that inference on its own.

   Rule 702 requires Agent Sonnedecker's expert opinions be based on sufficient facts and data. The Court finds that any testimony suggesting a clear range for any of the antennas (and thus a coverage area) fails to meet this requirement. Agent Sonnendecker never determined the range of the antennas in this case. He has, however, demonstrated

- 5 -

experience with antennas in general, and the Court is persuaded that the general characteristics of antennas is based on adequate facts and data.

For the same reasons that Agent Sonnendecker may not use the term "coverage area" the government may not introduce visual depictions of coverage areas. This means any representation of an antenna's coverage may only include two lines extending from the antenna (from a top-down perspective), with no arc connecting them. Agent Sonnendecker may testify to the distance between any location within a coverage angle, and any visual representations of coverage angles may include markers indicating such locations. But visual representations may not include a line extending from an antenna to a location labelled with the distance. Doing so might mislead the jury in the same way that an arc would: suggesting range with a level of clarity greater than that warranted by Agent Sonnendecker's investigation.

Finally, because cell-site data from some carriers (such as MetroPCS) do not include sector information—from which one can infer a coverage angle—Agent Sonnendecker may not testify to the location of cellphones in relation to antennas of those carriers, nor may the government present any visual representations of the coverage of those antennas. Although Agent Sonnendecker may testify to the general range of antennas for which he can determine a coverage angle, he may not for the antennas without sector information. The probative value of the coverage angles along with testimony to the general range of cell antennas narrowly survives under Rule 403. Without coverage angle information the cell-site data are even less probative, yet they retain the same potential to mislead the jury. As such, the Court finds any testimony about and visual representations of antenna coverage which lacks sector information is inadmissible when used to indicate the location of particular cellphones. Call logs indicating that particular cellphones connected with others at particular times are still admissible, of course, because they do not show location.

<u>Compliance with Disclosure Requirements</u>

The government has repeatedly failed to adequately disclose the subject matter of proposed expert testimony, despite the Court providing multiple opportunities to amend.

*See* Doc. 2042 at 6 ("The government is ordered, *again*, to file a new notice of expert witnesses…") (emphasis in original). The Court therefore strictly construes its previous admonition that the government be precise and thorough in its disclosures. After reviewing the government's most recent disclosures (Doc. 2084) and Agent Sonnendecker's testimony from the *Daubert* hearings, the Court finds some of the testimony exceeds the bounds of the disclosures. Although the disclosures mention that Agent Sonnendecker would speak about "the movement of cellular devices," the Court finds no mention of movement in any of the 15 listed opinions. *See* Doc. 2084 at 9-24. The Court ordered the government to provide, *inter alia*, "a written summary of [expert]witnesses' expected testimony," which "must be complete in describing not only the subject matter[] of the expert testimony, but *the opinions the experts will offer on those subjects*…" Doc. 2042 at 5 (emphasis added). So, although the government says in its disclosure that Agent Sonnendecker would testify on the movement of cellphones, that information was not listed in any of the disclosed opinions. Because Doc. 2084 was the government's *third* attempt at making its required disclosures (*See* Docs. 1047, 1355, and 2084), the Court is disinclined to show leniency. Accordingly, Agent Sonnendecker may not delivery testimony regarding the movement of cellphones. The jury may infer movement from the testimony Agent Sonnendecker is permitted to give, but the government lost its chance to have its expert draw that inference for the jury when it failed to fully comply with this Court's previous Orders.

## IV.

**IT IS ORDERED** as follows:

(1) The Court adopts Part B and rejects Part C of the Discussion of Judge Markovich's R&R.

(2) Defendants' Motion to Preclude (Doc. 1610) is granted in part and denied in part.

(3) Agent Sonnendecker's testimony and any visual aids associated with that testimony shall be restricted as follows:

    (A) No testimony may not include the term "coverage area" nor may any testimony

imply the existence of a definite coverage area. Agent Sonnendecker may refer to a "coverage angle" or "coverage direction."

(B) Visual representations of the coverage of cell antennas may not include arcs connecting the two lines which indicate a coverage angle. Nor may visual representations include lines connecting cell antennas to any other locations which are labelled with the distance between an antenna and another location.

(C) No testimony or evidence may be introduced which is based on data lacking sector information.

(D) Testimony may include the range that cell antennas might cover in general terms, but Agent Sonnendecker must acknowledge that he did not measure the range of any individual antennas.

Dated this 17th day of July, 2023.

Honorable James A. Soto
United States District Judge